IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JET PACKAGING GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cv-00787 |
| | ) | Judge Aleta A. Trauger |
| BRIAN E. VOTAW, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This case concerns the defendant's alleged dissemination of trade secrets and disparagement of the plaintiff. The defendant has filed a Motion to Dismiss (Doc. No. 10), which will be denied.

**I.     FACTS**

The plaintiff, Jet Packaging Group, LLC ("Jet Packaging"), is a Tennessee limited liability company with its principal place of business in Tennessee. (Doc. No. 1 ¶ 2.) The defendant, Brian Votaw, is a citizen and resident of Georgia. (*Id.* ¶ 3.) Votaw was employed by Jet Packaging until March 29, 2024, when he retired in lieu of termination under the parties' Termination of Employment Agreement ("Agreement"). (*Id.* ¶ 8.) Under the Agreement, Jet Packaging is to pay Votaw $250,000—"his share of payment due from the prior sale of Jet Packaging"—plus sales commissions. (*Id.* ¶ 9.)[1] For his part, Votaw agrees not to disparage the company or disclose "confidential information," which the Agreement defines. (*Id.* ¶¶ 10, 12–13.)

---

[1] The defendant states that the plaintiff has not paid him the $250,000 (Doc. No. 10-1 at 1), which the plaintiff does not contest. The parties do not further discuss this issue.

1

## II. PROCEDURAL HISTORY

On June 27, 2024, Jet Packaging filed a Complaint (Doc. No. 1) along with the Agreement (Doc. No. 1-1).[2] The Complaint alleges that Votaw violated the Agreement's non-disparagement and confidentiality provisions (*id.* ¶¶ 16–19), which constitutes breach of contract (Count I) (*id.* ¶¶ 20–26); violation of the Tennessee (Count II) and federal (Count III) Trade Secrets Acts (*id.* ¶¶ 27–41); and tortious interference with business relationships (Count IV) (*id.* ¶¶ 42–48). Jet Packaging seeks an order enforcing the Agreement; preliminary and permanent injunctions prohibiting the defendant from disparaging the plaintiff or disseminating confidential information; compensatory, exemplary, and punitive damages; and costs and fees. (*Id.* at 9.) Jet Packaging invokes this court's federal question jurisdiction—because one of the claims, misappropriation of trade secrets, is brought under 18 U.S.C. § 1836—and diversity jurisdiction. (Doc. No. 1 ¶¶ 4–5, 34.)

In response to the Complaint, Votaw filed a Motion to Dismiss (Doc. No. 10) and accompanying Memorandum (Doc. No. 10-1). Votaw moves for dismissal of the Complaint under Rule 12(b)(6) for failure to state a claim because, he argues, the plaintiff has not met Rule 8(a)(2)'s pleading standard. Jet Packaging has filed a Response (Doc. No. 11), and Votaw has filed a Reply. (Doc. No. 12.)

---

[2] Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 534 (6th Cir. 2012) ("In ruling on a Rule 12(b)(6) motion, a court 'may consider the Complaint and any exhibits attached thereto . . . so long as [it is] referred to in the Complaint and [is] central to the claims contained therein.'") (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)).

### III. LEGAL STANDARD—RULE 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 555–57. The court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). This standard does not require *detailed* factual allegations, but it does require "more than labels[,] conclusions, [or] a formulaic recitation" of the elements of a cause of action. *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555). "Specific facts are not necessary," as the statement need only provide the defendant fair notice of the nature of the claim and upon what grounds it rests. *Erickson v.*

3

*Pardus,* 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555). And while Rule 8 does not require details, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "[T]he complaint must 'contain either direct or inferential allegations respecting all the material elements [of a claim] to sustain a recovery under some viable legal theory.'" *Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 758 (E.D. Ky. 2010) (quoting *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009)).

## IV. DISCUSSION

The defendant admits that he signed the Agreement (Doc. No. 10-1 at 1) and does not challenge the Agreement's validity or enforceability or the plaintiff's interpretation of the Agreement. The parties seem to agree that Tennessee law applies.[3] The defendant does not challenge venue or this court's jurisdiction. The sole issue is whether the Complaint's allegations are sufficiently detailed to state a claim.

The bulk of the plaintiff's allegations are contained in four paragraphs:

> 16. After his separation from Plaintiff, Defendant transmitted confidential information to various third parties, including but not limited to, Plaintiff's customers, clients, vendors, and competitors.
>
> 17. Upon information and belief, Defendant transmitted confidential business strategies and plans, confidential and proprietary information about Plaintiff's vendors and client lists, and confidential financial information about Plaintiff.
>
> 18. Likewise, since signing the Agreement, Defendant has made false and disparaging remarks about Plaintiff to Plaintiff's customers, clients, and vendors.
>
> 19. As a result of the Defendant's disparaging remarks and dissemination of confidential and proprietary information, Plaintiff has suffered significant damages, including but not limited to, losing a major client.

---

[3] (*See* Doc. No. 1-1 ¶ 7(b) ("The validity and construction of this Agreement and the performance of the Parties under this Agreement shall be governed and construed in accordance with the laws of the State of Tennessee."); Doc. No. 10-1 at 6 (replying to the Complaint's Count IV, Tortious Interference with Business Relationships, which does not specify applicable law, with an argument applying Tennessee law).)

4

(Doc. No. 1 ¶¶ 16–19.)

In addition, the plaintiff makes further allegations in each count. For example, in the Complaint's Count IV, for tortious interference with business relationships, the plaintiff alleges that the "Defendant has . . . and . . . is continuing to . . . communicate with Plaintiff's customers, prospective customers, and vendors to either gain their business and/or stop them from doing business with Plaintiff." (Doc. No. 1 ¶ 44.)

The parties disagree about whether the Complaint reaches the level of specificity Rule 8(2)(a) requires. The defendant argues that the plaintiff omits "any specific detail whatsoever" by not alleging *to whom* he disclosed confidential information and disparaged the plaintiff, "*what* specific information was disclosed" and "the content or nature of these alleged [disparaging] remarks," and *when* and *where* the disclosure and disparagement occurred. (Doc. No. 10-1 at 1, 3–4 (emphasis added).) Thus, the defendant argues, the plaintiff merely "restates elements of the cause of action or provides conclusory allegations." (Doc. No. 12 at 2.) This mere restatement, the defendant argues, does not give him notice of the "grounds upon which" the claims rest. (*Id.* at 1 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).)

The plaintiff responds that its allegations are sufficient to state a claim. For example, the plaintiff argues, the Complaint "has expressly stated what confidential information Defendant allegedly shared—confidential business strategies and plans, proprietary information about its vendors, client lists, and confidential financial information." (Doc. No. 11 at 5.) No further specificity is required, the plaintiff argues. (*Id.* at 5–6, 9–10.) The plaintiff adds that, otherwise, "Plaintiff would be forced to publicly disclose the very information it seeks to keep private and the information it seeks to prevent the Defendant from further sharing by the filing of this suit." (*Id.* at 7.)

This court finds that, as to each count, the plaintiff has stated a plausible claim to relief.

A.  Count I — Breach of Contract

Under Tennessee law, the essential elements of a breach of contract claim are: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of contract; and (3) damages caused by the breach. *See, e.g.*, *Insite Platform Partners, Inc. v. Comtech Mobile Datacom Corp.*, No. 21-5673, 2022 WL 2300673, at *3 (6th Cir. June 27, 2022) (citing *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011)); *Tin Packing Ltd. v. Li*, No. 3:22-CV-00642, 2023 WL 5266191, at *4 (M.D. Tenn. Aug. 15, 2023) (Richardson, J.).

The Agreement's existence and terms are undisputed, including the provisions prohibiting Votaw from making disparaging remarks to, or sharing confidential information—as defined—with, any third parties. (Doc. No. 1 ¶¶ 22–23; Doc. No. 10-1 at 1.) Because the parties do not dispute the first element, the court will address only the latter two.

The plaintiff alleges that Votaw "transmitted confidential business information" about the plaintiff and "made false and disparaging remarks about Plaintiff to Plaintiff's customers, clients, and vendors," thereby breaching the Agreement. (Doc. No. 1 ¶¶ 17, 18, 24.) This confidential information included "confidential business strategies and plans, confidential and proprietary information about Plaintiff's vendors and client lists, and confidential financial information about Plaintiff." (*Id.* ¶ 17.) The plaintiff alleges that the defendant transmitted this confidential information to "various third parties, including, but not limited to, Plaintiff's customers, clients, vendors, and competitors." (*Id.* ¶ 16) As a result of this alleged breach, the plaintiff alleges, it has "suffered significant damages, including but not limited to, losing a major client." (*Id.* ¶¶ 19, 25.)

The defendant argues that the Complaint falls short because it does not "state with any specificity what alleged confidential information Defendant shared, to whom, or when." (Doc. No.

6

10-1 at 4.) Neither, the defendant argues, does the Complaint state how the plaintiff has been damaged other than by "losing a major client." (*Id.*)

It is true that the Complaint does not specify what precise information the defendant allegedly shared, or with whom; what the alleged disparaging remarks were; or the precise damage other than losing a client. So, the defendant's argument is not baseless. But the plaintiff does allege that the defendant shared, with third parties, confidential information of a certain type: business strategies and plans, information about the plaintiff's vendors and client lists, and the plaintiff's financial information. (Doc. No. 1 ¶ 17.) The allegation of disparagement is a closer call because there is no detail whatsoever about the content of the allegedly false and disparaging statements; the plaintiff alleges only that the defendant made disparaging remarks to certain groups of people—the Plaintiff's customers, clients, and vendors—for a particular purpose—to injure the plaintiff. (*Id.* ¶¶ 18, 26.)

But the defendant seems to want this court to apply the heightened pleading standard required for a fraud claim. *Cf. Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 873 (11th Cir. 2023) (citation omitted) ("[A] plaintiff needs to plead the who, what, when, where, and how regarding a claim only when Rule 9(b)'s heightened pleading standard applies"). All that the Federal Rules require in this case, at this stage of the litigation, is "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court finds that the plaintiff meets that standard for the breach of contract claim because he plausibly alleges that the defendant shared certain confidential information with, and made disparaging remarks to, third parties. *Accord Expert Janitorial, LLC v. Williams*, No. 3:09-CV-283, 2010 WL 908740, at *1, 8–9 (E.D. Tenn. Mar. 12, 2010) (finding allegations of similar specificity as those in this case sufficient to state a claim).

7

Drawing on its "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and noting the "emphasis placed on clarity and brevity by the federal pleading rules," 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (4th ed. 2024 Update), the court finds that Count I survives the Rule 12(b)(6) Motion.

B.      Counts II & III — Misappropriation of Trade Secrets

The plaintiff alleges that the defendant misappropriated its trade secrets, in violation of the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701 *et seq.* and the federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* (Doc. No. 1 ¶¶ 27–32, 33–41.) Because the "elements of a DTSA claim are substantially the same as the elements of a TUTSA claim, . . . they can be analyzed together." *In re Island Indus., Inc.*, No. 23-5200, 2024 WL 869858, at *2 (6th Cir. Feb. 29, 2024) (citing *BNA Assocs., LLC v. Goldman Sachs Specialty Lending Grp.*, 602 F. Supp. 3d 1059, 1065 (M.D. Tenn. 2022), *aff'd*, 63 F.4th 1061 (6th Cir. 2023)); *see also ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 804 (E.D. Tenn. 2024) (consolidating its analysis of whether the plaintiff stated a claim under the DTSA and TUTSA).

"[T]he elements for a misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) misappropriation of the trade secret by the defendant; and (3) resulting detriment to the plaintiff." *ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 804 (E.D. Tenn. 2024) (quoting *BNA Assocs.*, 602 F. Supp. 3d at 1064). The defendant argues that the plaintiff has not pled these elements with sufficient specificity. (Doc. No. 10-1 at 5.) The plaintiff responds that it has. (Doc. No. 11 at 8). This court finds that, for purposes of a Rule 12(b)(6) motion to dismiss, the plaintiff has stated a plausible claim for relief.

For information to qualify as a "trade secret," (1) the information must derive independent economic value from not being generally known or ascertainable by proper means, (2) others must

8

Case 3:24-cv-00787     Document 13     Filed 12/27/24     Page 8 of 18 PageID #: 67

be able to obtain economic value from the information's disclosure or use, and (3) reasonable efforts must have been made to maintain the secrecy of the information. *See Pritchard v. Thompson*, No. 22-CV-2838-JPM-TMP, 2023 WL 5817658, at *8 (W.D. Tenn. Aug. 3, 2023), *R&R adopted*, No. 2:22-CV-2838-JPM-TMP, 2023 WL 5746922 (W.D. Tenn. Sept. 6, 2023) (citing Tenn. Code Ann. § 47-25-1702(4); 18 U.S.C. 1839(3)).

The DTSA and TUTSA both define "misappropriation" to mean, in relevant part:

Disclosure or use of a trade secret of another without express or implied consent by a person who:
. . .
(ii) At the time of disclosure or use, knew or had reason to know that that person's knowledge of the trade secret was:

(a) Derived from or through a person who had utilized improper means to acquire it;

(b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(c) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use[.]

Tenn. Code. Ann. § 47-25-1702(2)(B); *see also* 18 U.S.C. § 1839(5)(B).[4]

Here, the plaintiff identified the confidential information the defendant allegedly shared with third parties—business strategies and plans, information about vendors and client lists, and financial information—and alleged that this information constitutes trade secrets. (Doc. No. 1 ¶¶ 17, 28–29, 34–35.) In furtherance of its claim that the information constitutes trade secrets, the plaintiff alleges that it derives economic value from the information's secrecy; that others can derive value from it; and that it took reasonable measures under the circumstances to maintain the information's secrecy. (*Id.* ¶¶ 36–37.) Further, the plaintiff alleges that the defendant shared the

---

[4] The DTSA's wording differs slightly from the TUTSA, but not substantively.

9

information with third parties and that this constitutes misappropriation. (*Id.* ¶¶ 28–29, 34–35.) It is undisputed that the Agreement contained an expansive confidentiality clause. Third, the plaintiff alleges that it was damaged by the defendant's misappropriation of trade secrets: "[a]s a direct result of Defendant's actions to disrupt Plaintiff's business relationships, Plaintiff has suffered and continues to suffer damages, including . . . damage to Plaintiff's reputation, its contracts, its business opportunities, as well as suffering monetary damages." (Doc. No. 11 at 11 (citing Doc. No. 1 ¶ 45).)

Thus, the plaintiff has fulfilled Rule 8(a)'s requirement in relation to its misappropriation of trade secrets claims by "identifying the specific things it claims to constitute trade secrets and by alleging that those items were misappropriated by Defendants. This is sufficient to state a claim." *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 962 (M.D. Tenn. 2011) (Sharp, J.).

C.  Count IV — Tortious Interference with Business Relationships

Under Tennessee law, to set forth a claim for the tort of intentional interference with business relations ("IIBR"), a party must adequately plead:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002); *see also BNA Assocs., LLC v. Goldman Sachs Specialty Lending Grp.*, 63 F.4th 1061, 1063–64 (6th Cir. 2023) (citing *Trau-Med*, 71 S.W.3d at 701). Jet Packaging alleges that Votaw:

> [i]ntentionally interfered with Plaintiff's prospective and actual business relations by purposefully and knowingly inducing and seeking to cause Plaintiffs customer(s), prospective customer(s), and vendor(s) to fail to engage in a business

> relationship with Plaintiff, and/or to enter into a business relationship with competitors of Plaintiff. . . . Defendant has done so with improper purpose and improper methods. Defendant has sought to, and upon information and belief, is continuing to communicate with Plaintiff's customers, prospective customers, and vendors to either gain their business and/or stop them from doing business with Plaintiff.

(Doc. No. 1 ¶¶ 43–44.) In its Reply, the plaintiff adds:

> By making disparaging remarks about Plaintiff and sharing Plaintiff's confidential and proprietary information with prospective clients, existing clients, vendors, and competitors, Defendant intended to cause each customer or vendor to terminate their contracts with Plaintiff and intended to deter any prospective clients from doing business with Plaintiff. Defendant's motive to interfere with Plaintiff's existing and prospective client and vendor relationships was fueled by his desire to gain their business or stop them from doing any business with Plaintiff.

(Doc. No. 11 at 11 (citing Doc. No. 1 ¶¶ 43–44).)

1. *Existing or Prospective Business Relationship*

To the extent the plaintiff alleges that the defendant induced third parties to "terminate their contracts with" the plaintiff, it has failed to state a claim for IIBR. "Tennessee's intentional interference with business relations tort has a confined scope. . . . It does not reach relationships that have been reduced to a contract . . . . The gist of an IIBR claim is that the plaintiff's non-contractual business relationship with another was intentionally interfered with[.]" *BNA Assocs.*, 63 F. 4th at 1064 (citing *Trau-Med*, 71 S.W.3d at 701 n.4; *Clear Water Partners, LLC v. Benson*, No. E2016-00442-COA-R3-CV, 2017 WL 376391, at *7 (Tenn. Ct. App. Jan. 26, 2017)); *accord Horst v. Gaar*, No. W2023-00442-COA-R3-CV, 2024 WL 4972013, at *8 (Tenn. Ct. App. Dec. 4, 2024) (agreeing with *BNA*'s "understanding of the scope of the tort").

The plaintiff states that, "by making disparaging remarks . . . and sharing Plaintiff's confidential and proprietary information with . . . existing clients [and] vendors . . . Defendant intended to cause *each customer or vendor to terminate their contracts with Plaintiff*." (Doc. No.

11 at 11 (emphasis added).)[5] Moreover, while the court does not decide whether the plaintiff's description of "a major client" (Doc. No. 1 ¶ 19) constitutes a "*specific third part[y]*," the court cannot but infer that the plaintiff had a contract with this unnamed major client—which it alleges it "lost"—because the plaintiff alleges that the defendant "intended to cause *each* customer . . . to terminate *their contracts with Plaintiff*." (Doc. No. 11 at 11 (emphasis added).)

The plaintiff does not state, and the court has no basis upon which to draw reasonable inferences about, which of its existing business relationships the defendant allegedly interfered with had not been reduced to contract. Nor can the court—construing the Complaint in the light most favorable to the plaintiff and drawing all reasonable inferences in its favor—find that the Complaint alleges that the defendant "interfered with the exercise by [the major client] of [its] option to renew or extend [its] contract with the plaintiff." *Denuke Contracting Servs., Inc. v. EnergX, LLC*, No. 307-CV-114, 2007 WL 2509686, at *5 (E.D. Tenn. Aug. 30, 2007) (quoting

---

[5] The plaintiff's claim for IIBR relies both on the defendant's alleged misappropriation of trade secrets and on the defendant's alleged disparagement. The plaintiff argues that the confidential information that the defendant allegedly shared—business strategies and plans, information about vendors and client lists, and financial information—constitute trade secrets. (Doc. No. 11 at 8.) If, at a later stage of litigation, it becomes apparent that this claim depends on the alleged misappropriation, the claim will be dismissed. "TUTSA preempts common law causes of action if 'proof of those causes of action, in whole or in part, would constitute misappropriation of a trade secret.'" *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 845 (M.D. Tenn. 2019) (Richardson, J.) (quoting *Vincit Enters., Inc. v. Zimmerman*, No. 1:06-CV-57, 2006 WL 1319515, at *7 (E.D. Tenn. May 12, 2006)); *see* Tenn. Code Ann. § 47–25–1708(a) ("Except as provided in subsection (b), this part displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.").

*Trau-Med* at 701 n.4).[6] The plaintiff has stated only that it has "lost" "at least one major client."[7] The court will therefore address the plaintiff's remaining contention that the defendant interfered with business relationships with "prospective clients."

While it appears that no Tennessee court has defined "identifiable" in the context of a tortious interference with prospective business relationships claim, *accord United Biologics, LLC v. Amerigroup Tenn.*, Inc., No. 3:19-CV-180, 2024 WL 770640, at *16 (E.D. Tenn. Jan. 18, 2024) (engaging in a similar search and finding no such case), "a plaintiff in Tennessee needs to identify . . . only a 'class of persons' for *prospective* business relationships." *Assist-2-Sell, Inc. v. Assist-2-Build, LLC*, No. 1:05-CV-193, 2005 WL 3333276, at *7 (E.D. Tenn. Dec. 6, 2005) (emphasis in original) (concluding further that "failure to name even a class of third persons does not require dismissal" where an identifiable class of third persons can reasonably be inferred from the pleadings and noting that the Tennessee Supreme Court's choice "to use the word 'identifiable' instead of 'identified' suggest[s] at [the motion to dismiss] stage of litigation it is not necessary for a plaintiff to name classes of third persons").

The defendant argues that the plaintiff has "not identified . . . any prospective relationship with an identifiable class of third persons." (Doc. No. 10-1 at 6.) The plaintiff responds that it has identified prospective customers: "midsize to enterprise size companies across several industries

---

[6] *Cf. United Biologics, LLC v. Amerigroup Tenn., Inc.*, No. 3:19-CV-180, 2024 WL 770640, at *17 (E.D. Tenn. Jan. 18, 2024) ("[A]lthough UAS cannot use a tortious-interference-with-business-relations claim to recover damages resulting from its prior contractual agreements with primary-care physicians in Tennessee, it is not foreclosed from asserting that Defendants' alleged improper conduct interfered with future contractual relationships with primary-care physicians who stopped contracting with UAS.") (citing *Clear Water*, 2017 WL 376391, at *7).

[7] The plaintiff does not allege tortious interference with contract or inducement of breach of contract.

13

and markets seeking Plaintiff's packaging solution services." (Doc. No. 11 at 10 (citing Doc. No. 1 ¶¶ 2, 38).) The paragraphs the plaintiff points this court to, in turn, state: "Plaintiff provides product packaging solutions to midsize to enterprise size companies across several industries and markets[,]" (Doc. No. 1 ¶ 2), and "[the plaintiff is] an industry leader in product packaging solutions for midsize to enterprise size companies across several industries and markets[.]" (*Id.* ¶ 38).

The court finds that the plaintiff has stated, or the court can reasonably infer, that the class of potential customers are medium to "enterprise size" companies that need packaging. This level of specificity is sufficient. *Accord Ever-Seal, Inc. v. Duraseal, Inc.*, No. 3:22-CV-00365, 2022 WL 1697391, at *7 (M.D. Tenn. May 26, 2022) (Richardson, J.) (finding that "potential customers purchasing its [wood and concrete] sealing services" was an identifiable class); *Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2015 WL 13847410, at * 13 (E.D. Tenn. Dec. 11, 2015) (explaining that a plaintiff need only identify "a class of third persons," and not specific persons, for prospective business relationships and finding allegations sufficient where the plaintiff alleged that the defendant interfered with prospective classes of customers, including outdoor retailers); *Cook v. Britton*, No. CIV. WMN-11-2305, 2012 WL 2523385, at *3 (D. Md. June 28, 2012) (applying Tennessee law and finding that a class of "potential eBay customers," though unlimited by geography, was "limited by market specificity" because "prospective customers would only include those in the market for horse tack[.]"); *Fifth Third Bank v. Steve Hulen Const., LLC*, No. 3:11–0035, 2011 WL 2433711, at *7 (M.D. Tenn. June 14, 2011) (holding that the plaintiffs specified an identifiable class of third persons when they claimed that the defendant interfered with their relations with the "Williamson County banking community"); *PPG Indus. v. Payne*, No. 3:10-CV-73, 2012 WL 1836314, at *4 (E.D. Tenn. May 21, 2012) (finding it was

14

sufficient to state a claim where the counterclaimant identified prospective business relationships as potential "paint-buying customers").

   2. *Knowledge of Relationship*

The plaintiff must plead the defendant's knowledge of the at-issue business relationship and not a mere awareness of the plaintiff's business dealings with others in general. *Trau-Med*, 71 S.W.3d at 701. Votaw argues that "because [the plaintiff] has not identified any . . . prospective relationship with an identifiable class of third persons . . . it has not shown Mr. Votaw's knowledge of such relationships." (Doc. No. 10-1 at 6.) In response, Jet Packaging argues that Votaw "had knowledge of" its "prospective client market after serving as Plaintiff's Vice President of Sales and Business Development, as a member of Plaintiff's Board of Directors, and as a Broker." (Doc. No. 11 at 10–11 (citing Doc. No. 1 ¶ 11).)

"Few, if any, cases elaborate on the degree of knowledge a plaintiff must demonstrate to carry its burden on the second element." *Univ. of Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*, No. 3:19-CV-508, 2024 WL 4101911, at *26 (E.D. Tenn. Aug. 7, 2024). At this stage in the litigation, the court finds that the plaintiff has plausibly pled that Votaw knew about its potential customers by virtue of his recent position as Vice President of Sales and Business Development.

   3. *Intent to cause the breach or termination of the business relationship*

The plaintiff must plead the defendant's intent to cause the breach or termination of the business relationship. *Trau-Med*, 71 S.W.3d *at* 701. Votaw states that Jet Packaging "has only in conclusory fashion stated that Mr. Votaw acted with intent." (Doc. No. 10-1 at 6.) In response, the plaintiff argues that it alleges that Votaw made disparaging remarks to, and shared confidential information with, prospective clients and thereby "intended to deter any prospective clients from doing business with Plaintiff." (Doc. No. 11 at 11 (citing Doc. No. 1 ¶¶ 43–44).) Votaw's motive,

15

according to the Complaint, was "either to gain their business and/or stop them from doing business with Plaintiff." (Doc. No. 1 ¶ 44.)

Courts have found that a plaintiff inadequately pleads the intent element by merely pleading intentional conduct that incidentally interferes with an existing or prospective business relationship. *See, e.g.*, *S. Transp., Inc. v. Lyft, Inc.*, No. 16-02669, 2017 WL 2838207, at *8 (W.D. Tenn. June 30, 2017) (finding a pleading inadequate that alleged that, "the parties compete in the same market and business gained by one party generally means business lost by the other party"); *Overnite Transp. Co. v. Teamsters Loc. Union No. 480*, No. M2002-02116-COA-R3CV, 2004 WL 383313, at *13 (Tenn. Ct. App. Feb. 27, 2004) ("[T]he allegation that the Union's conduct 'was intentional' does not satisfy the requirement of alleging that the Union intended to cause a breach in the business relationship at issue. Rather, Overnite must allege that the Union intentionally caused a breach in Overnite's relationships") *aff'd*, 172 S.W.3d 507 (Tenn. 2005).

But where the plaintiff pleads that the defendant intentionally interfered with the business relationship, that is sufficient to state a claim. *Accord, e.g.*, *Assist-2-Sell*, 2005 WL 3333276, at *4 ("Unlike *Overnite,* Defendants specifically allege [that the counter-defendants] intentionally interfered with their business relations. Therefore, intent to interfere with Defendants' business relations has sufficiently been alleged[.]"). Moreover, this court has found in similar circumstances that, even if a complaint does not expressly state that the defendant's actions were taken for the purpose of interfering with the plaintiff's business relations, the court may yet draw a reasonable inference from a complaint sufficient to establish that the defendant intended to interfere with the plaintiff's business relationship. *See Whitehardt, Inc. v. McKernan*, No. 3:15-CV-01307, 2016 WL 4091626, at *10 (M.D. Tenn. Aug. 2, 2016) ("The use of improper means suggests an improper motive").

16

In this case, the plaintiff alleges that the defendant, using improper means, "intentionally interfered with Plaintiff's prospective and actual business relations by purposefully and knowingly inducing and seeking to cause Plaintiff's customer(s), prospective customer(s), and vendor(s) to fail to engage in a business relationship with Plaintiff . . . and/or enter into a business relationship with competitors of Plaintiff." (Doc. No. 1 ¶ 43.) The Complaint alleges that the defendant "has sought to and . . . is continuing to[] communicate with Plaintiff's customers, prospective customers, and vendors to either gain their business and/or stop them from doing business with Plaintiff." (*Id.* ¶ 44.) The court therefore finds that the plaintiff has plausibly pled that the defendant acted with intent.

4. *Improper Motive or Means*

To state an IIBR claim, a plaintiff must allege that the defendant had an "improper motive" or used "improper means"—"means that are illegal, independently tortious, or that violate an established standard of trade or profession." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 176–77 (Tenn. Ct. App. 2007) (quoting *Trau-Med*, 71 S.W.3d at 701). "Examples of illegal or tortious conduct include violations of statutes, rules, or recognized common law rules, violence, threats, bribery, unfounded litigation, fraud, misrepresentation, defamation, duress, undue influence, misuse of confidential information, or breach of a fiduciary duty," and can also include "unethical conduct," described as "sharp dealing, overreaching or unfair competition." *Id.*; *see also BNA Assocs.*, 63 F.4th at 1065.

Jet Packaging alleges that Votaw made disparaging remarks to, and shared confidential information with, prospective clients, (Doc. No. 1 ¶¶ 43–44), thereby breaching the Agreement. (*Id.* ¶ 18.) The breach of contract, if proved, is independently actionable. Because the court finds that the plaintiff has adequately alleged improper means, it does not address improper motive.

17

5. *Damages*

The plaintiff must plead damages resulting from the tortious interference. *Trau-Med,* 71 S.W.3d at 701. The Complaint alleges that the "Plaintiff has been damaged by Defendant's tortious interference in an amount to be determined at trial." (Doc. No. 1 ¶ 47.) The defendant refers to this as "conclusory," but otherwise makes no argument that such an allegation of damages is insufficient for an IIBR claim. (Doc. No. 10-1 at 6.) The plaintiff responds that, "[a]s a direct result of Defendant's actions to disrupt Plaintiff's business relationships, Plaintiff has suffered and continues to suffer damages, including . . . damage to Plaintiff's reputation, its contracts, its business opportunities, as well as suffering monetary damages." (Doc. No. 11 at 11 (citing Doc. No. 1 ¶ 45).) Even ignoring claims that harm to the plaintiff's contractual business relationships has caused damages, the plaintiff alleges damages resulting from the defendant's interference with its "business opportunities." (*Id.*) A plaintiff "need not allege specific damages at the pleading stage to state a cause of action for tortious interference with business relations." *Assist-2-Sell*, 2005 WL 3333276, at *7. Thus, the court finds that the plaintiff has adequately pled damages—and, therefore, that the defendant has stated a claim for intentional interference with business relationships.

**V.    CONCLUSION**

For the reasons set forth herein, the Motion to Dismiss (Doc. No. 10) will be denied.

　　　　　　　　　　　　　　　　　　　　ALETA A. TRAUGER
　　　　　　　　　　　　　　　　　　　　United States District Judge